In re ROBERT GREENBERG & BRO.

(District Court, E. D. New York. May 25, 1910.)

BANKRUPTCY (§ 136*)—ASSETS—CONCEALMENT.

Facts *held* insufficient to explain a loss of assets by a bankrupt, and to justify the referee's order requiring the payment of a specified sum to the trustee as his assets.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of Robert Greenberg & Bro., bankrupts. On petition to review the referee's order requiring the bankrupts to turn over to the trustee concealed assets. Affirmed.

Nathaniel Tonkin, for bankrupts.

James, Schell & Elkus (Robert P. Levis, of counsel), for trustee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CHATFIELD, District Judge. The referee, as special commissioner, reports that the bankrupts should turn over the sum of $2,022.89, which they have concealed and failed to account for, to the trustee. The property admitted by them to have been in their possession, over and above all liabilities, on the 1st day of March, 1908, amounted to $11,437.50, which, with the excess of liabilities over assets, as shown by the schedules, viz., $17,457.08, makes a total of $28,894.58 to be charged against the bankrupts. They are credited by the referee with certain items presented in the testimony to account for those sums. He accepts as credible the loss of $3,400 in conducting a store in Cortlandt street, New York, $13,934.09 on individual sales throughout their general business during the period in question, and $1,000, a wedding present given by Robert Greenberg to his sister (which he says represented money that she had earned in connection with the business), and other items, including the stock on hand at the time of bankruptcy.

The bankrupts also allege that the testimony shows, beyond the amounts credited by the referee, $500 expenses of the sister's wedding, $200 more estimated as lost in the Cortlandt street store, $1,031 paid to one Fox, who had been nominally a partner, $300 for business expenses during a period of three weeks not included by the referee, $200 more from losses on bad debts, and $462.40 additional, estimated value of stock; the referee having credited them in each instance with the minimum, instead of the maximum, as estimated by the bankrupts. These items, added together, would more than equal the amount of the deficit as found by the referee.

If any items are to be allowed at all, and if such ridiculous testimony as was given by these bankrupts in estimating their business losses is to be believed, there would seem to be no reason for disputing the statements of the bankrupts as to when they made the payments in question, and their maximum estimates of loss should be used, rather than the minimum estimates thereof.

It is impossible to explain the loss of goods in such wholesale manner, and such large items by ordinary expenses and mere shrinkage of business between March 1st and November 5th of the same year. Either the goods of the firm were secreted and disposed of in large quantities, or the firm had no such stock as they claimed when they attempted to show a surplus of over $11,000 in March, 1908. But, even if that be granted them, their business from that time until November shows no such depreciation as would cause a shrinkage to a point where their liabilities exceeded their assets by over $14,000; and if any satisfactory method of tracing the property, or of picking out the amount of assets which the bankrupts have not satisfactorily explained, had been presented, there would be abundant testimony upon which to base the referee's report.

Inasmuch, however, as the referee has found in favor of the bankrupts upon all the items of testimony, with the exception of the small ones above mentioned, and as he refuses to believe the same sort of statements as those previously made by them, it is difficult to see how he reached such a conclusion. Upon the entire matter, the

court has no hesitation in directing that the bankrupts turn over to the trustee in bankruptcy whatever property they have in their control or which they have secreted from the trustee, and to hold that (judged from their attempted explanation) this property amounts to much more than the sum named by the referee.

Hence an order may be entered directing the bankrupts, upon this report, to repay that amount, or be punished if they fail so to do.